UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------

STEEVE BELMONT,

                Plaintiff,                          **MEMORANDUM & ORDER**
                                                                                             18-CV-6655 (MKB)

        v.

JETBLUE AIRWAYS CORPORATION,

                Defendant.

---------------------------------------------------------------

MARGO K. BRODIE, United States District Judge:

       Plaintiff Steeve Belmont commenced the above-captioned action on October 12, 2018 in the New York State Supreme Court, Kings County against Defendant JetBlue Airways Corporation. (Notice of Removal ¶ 1, Docket Entry No. 1.) On November 21, 2018, Defendant removed the action to the Eastern District of New York. (*Id*.) Plaintiff alleges that the actions of Defendant's employees caused him to be "falsely arrested and unlawfully detained," (*id*. ¶ 34), and brings state law claims for false arrest, unlawful imprisonment, defamation of character, battery, and intentional and negligent infliction of emotional distress, and seeks punitive damages and attorneys' fees, (*see generally* Compl., annexed to Notice of Removal as Ex. A, Docket Entry No. 1-1).

       Currently before the Court is Plaintiff's motion to remand the action to state court; Defendant opposes the motion. (Pl. Mot. to Remand ("Pl. Mot."), Docket Entry No. 11; Pl. Mem. in Supp. of Mot. to Remand ("Pl. Mem."), Docket Entry No. 13; Def. Mem. in Opp'n to Mot. ("Def. Mem."), Docket Entry No. 16.) As further explained below, the Court lacks subject matter jurisdiction and therefore grants Plaintiff's motion and remands the action to state court.

## I. Background

On April 21, 2018, Plaintiff accompanied his family to John F. Kennedy International Airport ("JFK") in Queens, New York, to assist them in boarding a flight to Florida. (Compl. ¶¶ 10–15.) At JFK, Plaintiff requested a "gate pass" to assist his family in boarding the aircraft. (*Id*. ¶¶ 11–12.) Defendant alleges that Plaintiff unlawfully boarded the aircraft, but Plaintiff contends that Defendant's agent, servant, or employee gave Plaintiff a "gate pass."[1] (*Id*. ¶ 12; Def. Mem. 2.) Plaintiff used the "gate pass" to "escort his children and their mother to the 'JETBLUE' terminal at JFK Airport and in particular[,] onto the airplane [for] Flight 1401 bound for Florida." (Compl. ¶ 14.) After Plaintiff assisted his family, he exited the aircraft and left JFK Airport. (*Id*. ¶ 16.)

The following day, April 22, 2018, at approximately 4:00 PM, officials of the Port Authority of New York and New Jersey arrested Plaintiff for his actions in boarding the aircraft at the Jetblue Terminal and charged him with criminal impersonation in the second degree, in violation of section 190.25 of the New York Penal Law, and unlawful use or possession of official police cards, in violation of section 14-108-1 of the New York City Administrative Code. (*Id*. ¶¶ 17–18, 21.) Plaintiff was transported to Central Booking on April 23, 2018 at approximately 3:00 AM and later released from the Queens County Criminal Court at approximately 4:00 PM. (*Id*. ¶¶ 19–21.) On August 3, 2018, the charges against Plaintiff were dismissed and sealed. (*Id*. ¶ 26.)

On October 12, 2018, Plaintiff commenced an action in the New York State Supreme Court, Kings County. (Compl.)

---

[1] Plaintiff believes Gilbert Vargas and Sean Austin are the Defendant's employees who provided him with a "gate pass." (Compl. ¶¶ 12–13.)

On November 21, 2018, Defendant filed a Notice of Removal of the action to this Court. (Notice of Removal.) In support of removal, Defendant asserts that the Court has subject matter jurisdiction under 28 U.S.C. § 1331 because Plaintiff's state law claims are preempted by the Federal Aviation Act ("FAA") and implicate substantial issues of federal law. (*Id*. ¶¶ 10–11, 19.) Plaintiff seeks to remand the action to the New York State Supreme Court, Kings County. (Pl. Mot.) In support of his motion, Plaintiff argues that the FAA does not preempt state law tort claims and that JetBlue's anticipated defense is insufficient to confer federal question jurisdiction. (Pl. Mem. 4.) Plaintiff also seeks costs and attorneys' fees. (*Id*. at 13.)

## II. Discussion

### a. Standards of review

#### i. Removal

A defendant may remove a civil action brought in state court to a federal court in "any civil action . . . of which the district courts of the United States have original jurisdiction." 28 U.S.C. § 1441(a). Federal courts are courts of limited jurisdiction. *Lyndonville Sav. Bank & Trust Co. v. Lussier*, 211 F.3d 697, 700–01 (2d Cir. 2000). The statutory provisions for federal subject matter jurisdiction are contained in 28 U.S.C. §§ 1331 and 1332. Federal question jurisdiction provides federal courts jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." *Bounds v. Pine Belt Mental Health Care Res.*, 593 F.3d 209, 215 (2d Cir. 2010) (quoting 28 U.S.C. § 1331). A plaintiff properly invokes section 1331 jurisdiction when he pleads a colorable claim "arising under" the Constitution or laws of the United States. *See Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Trust for S. Cal.*, 463 U.S. 1, 10 (1983) ("[A] defendant may not remove a case to federal court unless the plaintiff's complaint establishes that the case 'arises under' federal law."). "[I]n light of the

3

congressional intent to restrict federal court jurisdiction, as well as the importance of preserving the independence of state governments, federal courts construe the removal statute narrowly, resolving any doubts against removability." *Purdue Pharma L.P. v. Kentucky*, 704 F.3d 208, 213 (2d Cir. 2013) (quoting *Lupo v. Human Affairs Int'l, Inc.*, 28 F.3d 269, 274 (2d Cir. 1994)). A potential defense premised on a federal statute is insufficient to warrant removal. *See Aetna Health Inc. v. Davila*, 542 U.S. 200, 207 (2004) (stating that "the existence of a federal defense normally does not create statutory 'arising under' jurisdiction"); *Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 14 (1983) (same). In addition, "the mere presence of a federal issue in a state cause of action does not automatically confer federal-question jurisdiction." *Merrell Dow Pharm. Inc. v. Thompson*, 478 U.S. 804, 813 (1986). A notice of removal must allege a proper basis for removal under 28 U.S.C. §§ 1441–1445. *See In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*, 488 F.3d 112, 124 (2d Cir. 2007) ("In determining whether jurisdiction is proper, we look only to the jurisdictional facts alleged in the Notices of Removal."); *Bankhead v. New York*, No. 13-CV-3377, 2013 WL 6145776, at *1 (E.D.N.Y. Nov. 21, 2013) ("An effective petition for the removal of a state action to federal court must allege a proper basis for the removal under sections 1441 through 1445 of Title 28." (quoting *Negron v. New York*, No. 02-CV-1688, 2002 WL 1268001, at *1 (E.D.N.Y. Apr. 1, 2002))). The party seeking removal bears the burden of proving that the jurisdictional and procedural requirements have been met. *Cal. Pub. Emps.' Ret. Sys. v. WorldCom, Inc.*, 368 F.3d 86, 100 (2d Cir. 2004) ("Where, as here, jurisdiction is asserted by a defendant in a removal petition, it follows that the defendant has the burden of establishing that removal is proper.").

    ii.   **Well-pleaded complaint rule**

"Whether federal courts have federal question jurisdiction over an action is typically

4

governed by the 'well-pleaded complaint' rule, pursuant to which federal question jurisdiction exists only if 'plaintiff's statement of his own cause of action shows that it is based on federal law.'" *Romano v. Kazacos*, 609 F.3d 512, 518 (2d Cir. 2010) (quoting *Vaden v. Discover Bank*, 556 U.S. 49, 70 (2009)); *Jana Master Fund, Ltd. v. JP Morgan Chase & Co.*, 490 F. Supp. 2d 325, 329 (S.D.N.Y. 2007) ("Federal jurisdiction must be found from what necessarily appears in the plaintiff's statement of his own claim . . . , unaided by anything alleged in anticipation of avoidance of defenses which it is thought the defendant may interpose." (quoting *D'Alessio v. N.Y. Stock Exch., Inc.*, 258 F.3d 93, 100 (2d Cir. 2001))). "A cause of action arises under federal law only when the plaintiff's 'well-pleaded complaint' raises an issue of federal law." *New York v. Shinnecock Indian Nation*, 686 F.3d 133, 138 (2d Cir. 2012). "A cause of action raises an issue of federal law only when 'a right or immunity created by the Constitution or laws of the United States . . . [is an] essential [element] of the . . . cause of action.'" *Shinnecock Indian Nation*, 686 F.3d at 138 (quoting *Gully v. First Nat'l Bank*, 299 U.S. 109, 112 (1936)). A plaintiff "is free to avoid federal jurisdiction by 'pleading only state claims even where a federal claim is also available.'" *Romano*, 609 F.3d at 518 (quoting *Marcus v. AT&T Corp.*, 138 F.3d 46, 52 (2d Cir. 1998)).

However, under the artful pleading doctrine, which "is an independent corollary of the well-pleaded complaint rule[,] . . .a plaintiff may not defeat removal by omitting to plead necessary federal questions in a complaint." *Franchise Tax Bd.*, 463 U.S. at 22; *Romano*, 609 F.3d at 518–19 ("[T]here exists a corollary to the well-pleaded complaint rule — the 'artful pleading' rule — pursuant to which plaintiff cannot avoid removal by declining to plead 'necessary federal questions.'" (quoting *Rivet v. Regions Bank*, 522 U.S. 470, 475 (1998))); *Fin. and Trading, Ltd. v. Rhodia S.A.*, No. 04-CV-6083, 2004 WL 2754862, at *4 (S.D.N.Y. Nov. 30,

2004) ("[A] plaintiff is not completely free to limit the complaint as he wishes. The doctrine of artful pleading, an 'independent corollary' of the well-pleaded complaint rule, holds that 'a plaintiff may not defeat removal by omitting to plead necessary federal questions in a complaint.'" (quoting *Franchise Tax Bd.*, 463 U.S. at 22)). "If the artful pleading rule applies, courts look beyond the face of an 'artfully pled' complaint to determine whether plaintiff has 'cloth[ed] a federal law claim in state garb' by pleading state law claims that actually arise under federal law." *Romano*, 609 F.3d at 519 (quoting *Travelers Indem. Co. v. Sarkisian*, 794 F.2d 754, 758 (2d Cir. 1986)).

"Three situations exist in which a complaint that does not allege a federal cause of action may nonetheless 'aris[e] under' federal law for purposes of subject matter jurisdiction." *Fracasse v. People's United Bank*, 747 F.3d 141, 144 (2d Cir. 2014). First, where "Congress expressly provides, by statute, for removal of state law claims," second, where "the state law claims are completely preempted by federal law," and third, "in certain cases if the vindication of a state law right necessarily turns on a question of federal law."[2] *Id*. (citations omitted).

### b. Defendant has not shown that the FAA completely preempts Plaintiff's state law tort claims

Defendant argues that federal question jurisdiction exists because the FAA completely preempts Plaintiff's state law claims. (Def. Mem 5–6; Notice of Removal ¶¶ 11, 23.)

Plaintiff argues that the Court lacks subject matter jurisdiction because he only alleges state law tort claims and the FAA does not completely preempt those claims. (Pl. Mem. 4.)

---

[2] Defendant does not assert that the FAA expressly provides for removal of state law claims, but argues instead that (1) Plaintiff's claims are completely preempted by the FAA and (2) the state law tort claims necessarily raise a substantial federal issue. (Def. Mem. 3–5.)

Under the complete preemption doctrine,[3] "a plaintiff's 'state cause of action [may be recast] as a federal claim for relief, making [its] removal [by the defendant] proper on the basis of federal question jurisdiction.'" *Vaden*, 556 U.S. at 61 (quoting Wright & Miller, 14B Fed. Prac. & Proc. Juris. § 3722.2); *see also Taylor*, 481 U.S. at 63 (finding that, under the complete preemption doctrine, "Congress may so completely pre-empt a particular area that any civil complaint raising this select group of claims is necessarily federal in character"); *Sullivan*, 424 F.3d at 272 ("Under the complete preemption doctrine, certain federal statutes are construed to have such 'extraordinary' preemptive force that state-law claims coming within the scope of the federal statute are transformed, for jurisdictional purposes, into federal claims — i.e., completely preempted."). "When a plaintiff raises such a completely preempted state-law claim in his complaint, a court is obligated to construe the complaint as raising a federal claim and therefore

---

[3] As recognized by the Second Circuit, "[t]he complete-preemption doctrine must be distinguished from ordinary preemption, also known as defensive preemption," or ordinary defensive preemption. *Sullivan v. Am. Airlines, Inc.*, 424 F.3d 267, 272 (2d Cir. 2005). "Ordinary defensive preemption comes in three familiar forms: express preemption, conflict preemption, and field preemption." *Id*. at 272 n.7. "Some commentators seem to equate the defense of field preemption, which defeats a plaintiff's state-law claim because federal law 'occupies the field' within which the state-law claim falls, with the doctrine of complete preemption, which creates federal subject-matter jurisdiction over preempted state-law claims." *Id*. However, "[t]he Supreme Court has left no doubt . . . that a plaintiff's suit does not arise under federal law simply because the defendant may raise the defense of ordinary preemption." *Id*. Although it "is true that the defense of field preemption and the doctrine of complete preemption both rest on the breadth, in some crude sense, of a federal statute's preemptive force," the "two types of preemption are . . . better considered distinct." *Id*. (citing S. Candice Hoke, *Preemption Pathologies and Civic Republican Values*, 71 B.U. L. Rev. 685, 747 (1991) ("Another pathology attending field preemption lies in some courts' confusion of field preemption with the complete preemption doctrine.")).
 Because the defense of field preemption is insufficient to support a finding of subject matter jurisdiction over Plaintiff's lawsuit, *see Sullivan*, 424 F.3d at 275 ("The Supreme Court has left no doubt . . . that a plaintiff's suit does not arise under federal law simply because the defendant may raise the defense of ordinary preemption."), the Court considers only whether the FAA completely preempts Plaintiff's state law tort claims.

7

'arising under' federal law." *Id.* "In concluding that a claim is completely preempted, a federal court finds that Congress desired not just to provide a federal defense to a state law claim but also to replace the state law claim with a federal law claim and thereby give the defendant the ability to seek adjudication of the claim in federal court." *Wurtz v. Rawlings Co., LLC*, 761 F.3d 232, 238 (2d Cir. 2014). "[W]hen a claim is completely preempted, 'the law governing the complaint is exclusively federal.'" *Id.* (quoting *Vaden*, 556 U.S. at 61).

"The Supreme Court has only found three statutes to have the requisite extraordinary preemptive force to support complete preemption: [section] 301 of the Labor–Management Relations Act (LMRA), . . . [section] 502(a) of the Employee Retirement Income Security Act (ERISA), . . . and [sections] 85 and 86 of the National Bank Act." *Sullivan*, 424 F.3d at 272 (citations omitted).

As to the FAA, the Second Circuit has recognized that it regulates and occupies the field of aviation safety. *See Air Transp. Ass'n of Am. Inc. v. Cuomo*, 520 F.3d 218, 224 (2d Cir. 2008) ("The FAA was enacted to create a 'uniform and exclusive system of federal regulation' in the field of air safety." (citation omitted)); *see also Goodspeed Airport LLC v. E. Haddam Inland Wetlands & Watercourses Comm'n*, 634 F.3d 206, 209 (2d Cir. 2011) (explaining that the Second Circuit has held that "Congress intended to occupy the field of air safety . . . .") "The FAA was passed by Congress for the purpose of centralizing in a single authority — indeed, in one administrator — the power to frame rules for the safe and efficient use of the nation's airspace." *Id.* (citation and internal quotation marks omitted). Indeed, Congress created the Transportation Security Administration ("TSA") by amending the FAA through the Aviation and Transportation Security Act ("ATSA"), and charging the TSA with, *inter alia*, (1) requiring air carriers to collect and share information pertaining to passengers, *see* 49 U.S.C. § 44909(a)(1),

(2) requiring air carriers to establish security programs to be approved by the TSA, *see* 49 U.S.C. § 44903, (3) assessing and investigating the effectiveness of air carriers' security systems, *see* 49 U.S.C. § 44916, and (4) providing for the deployment of federal air marshals, etc., *see* 49 U.S.C. § 44917.

However, although the Second Circuit has held that the FAA and the relevant regulations establish Congress' intent to occupy the field of air safety, *see Goodspeed*, 634 F.3d at 209, no court has held that the FAA completely preempts state law tort claims for false arrest, unlawful imprisonment, defamation of character, battery, or intentional and negligent infliction of emotional distress, and at least one Circuit has specifically held that the FAA does not completely preempt state law claims. *See Schmeling v. NORDAM*, 97 F.3d 1336, 1344 (10th Cir. 1996) ("Because Congress has neither expressly nor impliedly provided [the plaintiff] with a federal cause of action to enforce the FAA [regulations], we follow the 'prudent course' . . . and hold that [the plaintiff]'s suit [asserting claims under the Oklahoma Standards for Workplace Drug and Alcohol Testing Act and intentional infliction of emotional distress] is not subject to removal under the complete preemption doctrine."); *see also Goodspeed*, 634 F.3d at 209 ("[W]hile Congress in passing the [FAA] intended to occupy the entire field of air safety, . . . state and local statutes, regulations and actions" that "do not intrude into that field . . . are . . . not field-preempted."); *Vorhees v. Naper Aero Club, Inc.*, 272 F.3d 398, 403 (7th Cir. 2001) (concluding that, "in enacting the [FAA], Congress . . . only intended to provide a federal defense to the application of state law" and did not "intend to completely replace state law").[4]

---

[4] Even in the context of FAA field preemption, such preemption has been construed narrowly to include only claims that fall under the field of "air safety." *See Goodspeed*, 634 F.3d at 209. Although the boundaries of "air safety" have not been precisely defined, the phrase does not encompass all state law claims involving the conduct of airlines and airline personnel. *See Air Transp.*, 520 F.3d at 225 ("Although we have not addressed this precise issue, we have

Moreover, while the Second Circuit has not addressed whether the FAA provides for a private right of action for state law tort and personal injury claims, the Ninth Circuit and at least one district court in the Second Circuit have held that the FAA does not.[5] *See Martin v. Midwest Express Holdings*, 555 F.3d 806, 808 (9th Cir. 2009) ("[T]he FAA doesn't create a federal cause of action for personal injury suits."); *Rombom v. United Air Lines, Inc.*, 867 F. Supp. 214, 221 (S.D.N.Y. 1994) (finding that, under the FAA and ADA, "injured plaintiffs do not have an alternative administrative remedy to state tort claims"); *see also Drake v. Lab. Corp. of Am. Holdings*, 458 F.3d 48, 57 (2d Cir. 2006) (analyzing the FAA drug-testing regulations and finding that "[t]he remedies provided by the [FAA] do not include a private right of action for violations of FAA regulations").

Thus, because Defendant has not shown that the FAA provides for a private right of action for personal injury claims, Plaintiff would be left at a disadvantage were the Court to find that the FAA completely preempts his state law tort claims. *See O.S. ex rel. Sakar v. Hageland Aviation Servs., Inc.*, 609 F. Supp. 2d 889, 892 (D. Ak. 2008) (holding that "absent any provision in the FAA for an 'exclusive cause of action' for private litigants, there is no basis for federal preemption of all state law claims that are based on air safety violations").

Accordingly, the Court finds that Defendant has not met its burden of demonstrating that

---

acknowledged that the FAA does not preempt all state law tort actions."); *see also Parver v. JetBlue Airlines Corp.*, 649 F. App'x 539, 543 (2d Cir. 2016) (finding that although FAA regulations "vest the flight crew with authority to fly a plane however they deem necessary to promote safety . . . they do not amount to 'pervasive' regulations of passenger management with respect to [the plaintiff's] claimed intentional torts alleging injury from the misuse of authority").

[5] In *Martin v. Midwest Express Holdings*, the Ninth Circuit held that Congress could not have "intended to exclude all state law personal injury suits from the area of air travel," in part because the FAA "expressly preserves state remedies, declaring '[a] remedy under this part is in addition to any other remedies provided by law.'" 555 F.3d 806, 808 (9th Cir. 2009) (quoting 49 U.S.C. § 41112).

the FAA has completely preempted Plaintiff's state law tort claims.

### c. Defendant has not shown that Plaintiff's state law claims necessarily raise a substantial and disputed issue of federal law

In support of its argument that the Court has jurisdiction over Plaintiff's claims, Defendant argues that Plaintiff's claims arise from his alleged violation of federal aviation security regulations, which prohibit unauthorized individuals from boarding an aircraft and require airlines such as Defendant to notify law enforcement when there is a potential security breach onboard an aircraft. (Def. Mem. 5.) Defendant argues that Plaintiff's "claims necessarily turn on a question of federal immunity under 49 U.S.C. § 44941(a), which requires JetBlue to report any and all potential security threats to aviation safety or security to appropriate law enforcement agencies and affords JetBlue immunity from suit for so doing." (*Id*. at 7.)

Although the Supreme Court has "recognized for nearly 100 years that in certain cases federal-question jurisdiction will lie over state-law claims that implicate significant federal issues," *Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing*, 545 U.S. 308, 312 (2005), the "mere presence of a federal issue in a state cause of action does not automatically confer federal question jurisdiction," *Merrell Dow,* 478 U.S. at 813; *see also Gunn v. Minton*, 568 U.S. 251, 258 (2013) (finding that the third exception, which arises when a state law claim involves a substantial question of federal law, is "extremely rare").

For a federal issue embedded in a state law claim to give rise to federal question jurisdiction, the federal issue must be "(1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn*, 568 U.S. at 258 (citing *Grable*, 545 U.S. at 313–14); *see also id*. at 260 ("The substantiality inquiry under *Grable* looks . . . to the importance of the issue to the federal system as a whole."); *Bartlett v. Honeywell Int'l Inc.*, 737 F. App'x 543, 546 (2d

11

Cir. 2018) (finding federal jurisdiction over state law claims where the claims "raise[d] disputed, substantial federal issues which are amenable to federal court resolution without interfering with the federal-state balance approved by Congress"). "[S]ince *Grable*, the Supreme Court has emphasized that the substantial federal question doctrine applies only in a 'special and small' group of cases." *Veneruso v. Mt. Vernon Neighborhood Health Ctr.*, 933 F. Supp. 2d 613, 622 (S.D.N.Y. 2013) (quoting *Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 699 (2006)); *see also Baum v. Keystone Mercy Health Plan*, 826 F. Supp. 2d 718, 720 (E.D. Pa. 2011) (stating that *Grable* only allows for jurisdiction in a "small sliver of cases"). Neither the "mere presence" of a federal issue in a state cause of action nor the assertion of a federal interest is sufficient to confer federal jurisdiction. *See Merrell Dow*, 478 U.S. at 813; *Empire*, 547 U.S. at 701.

### i. Defendant has not shown that Plaintiff's state law claims "necessarily raise" an "actually disputed" federal issue

"A state-law claim 'necessarily' raises federal questions where the claim is affirmatively 'premised' on a violation of federal law." *N.Y. ex rel. Jacobson v. Wells Fargo Nat'l Bank. N.A.*, 824 F.3d 308, 315–16 (2d Cir. 2016) (citation omitted); *see also NASDAQ OMX Grp., Inc. v. UBS Sec., LLC*, 770 F.3d 1010, 1021 (2d Cir. 2014) ("[W]hether [the plaintiff] has violated its federally prescribed duty to operate a fair and orderly exchange necessarily raises a disputed question of federal law."); *D'Alessio*, 258 F.3d at 102 (finding federal jurisdiction where the plaintiff's "suit is rooted in violations of federal law" and "the gravamen of [the plaintiff's] complaint is that [the defendant] . . . failed to perform its statutory duty created under federal law, to enforce its members' compliance with those laws"). A state law claim does not "necessarily raise" a federal question when it "'assert[s] purely state-law causes of action' that do not require 'binding legal determinations of rights and liabilities under [federal law].'"

12

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Manning*, --- U.S. ---, --- 136 S. Ct. 1562, 1576 (2016) (Thomas, J., concurring) (quoting *Matsushita Elec. Indus. Co. v. Epstein*, 516 U.S. 367, 382, 384 (2016)).

"In enacting the ATSA, Congress sought 'to ensure that air carriers and their employees would not hesitate to provide the TSA with the information it needed' to respond to potential threats." *Baez v. JetBlue Airways Corp.*, 793 F.3d 269, 274 (2d Cir. 2015) (quoting *Air Wis. Airlines Corp. v. Hoeper*, 571 U.S. 237, 249 (2014)). Section 44941(a) of the ATSA provides in pertinent part:

> Any air carrier or . . . employee of an air carrier . . . who makes a voluntary disclosure of any suspicious transaction relevant to a possible violation of law or regulation, relating to air piracy, a threat to aircraft or passenger safety, or terrorism, . . . to any employee or agent of the Department of Transportation, the Department of Justice, any Federal, State, or local law enforcement officer, or any airport or airline security officer shall not be civilly liable to any person under any law or regulation of the United States, any constitution, law, or regulation of any State or political subdivision of any State, for such disclosure.

49 U.S.C. § 44941(a). As relevant, "[t]he ATSA excepts from this broad grant of immunity disclosures made 'with actual knowledge' that the statements were 'false, inaccurate, or misleading' or 'with reckless disregard as to the[ir] truth or falsity.'" *Baez*, 793 F.3d at 274 (quoting 49 U.S.C. § 44941(a)).

Defendant has not shown that Plaintiff's state law tort claims necessarily raise a disputed issue of federal law.[6] In *Grable*, the Supreme Court held that federal jurisdiction was proper

---

[6] Plaintiff brings state law claims under New York law for false arrest and imprisonment, defamation of character, battery, and intentional and negligent infliction of emotional distress. "Under New York law, 'to prevail on a claim of false arrest a plaintiff must show that (1) the defendant intended to confine him, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged.'" *Nzegwu v. Friedman*, 605 F. App'x 27, 29 (2d Cir. 2015) (quoting *Jocks v. Tavernier*, 316 F.3d 128, 135 (2d Cir.2003)). To state a defamation of character claim, a

13

over the plaintiff's state law quiet title claim because an "essential element" of the claim depended on whether the plaintiff was given "notice within the meaning" of a federal statute. 545 U.S. at 315. The Court stated that because the plaintiff had "premised its superior title claim on a failure by the IRS to give it adequate notice [of the sale of the property], as defined by federal law," the plaintiff's claim "sensibly belongs in a federal court." *Id.* at 314–15. Put differently, the plaintiff's right to relief depended on federal law. Unlike *Grable*, based on the allegations in the Complaint, Plaintiff's right to relief on his state law claims do not depend on the ATSA's immunity provision. Defendant's reliance on section 44941(a)'s immunity provision is a defense to Plaintiff's action that Defendant can raise in state court. *See N.Y. by Scneiderman v. Charter Commc'ns, Inc.*, No. 17-CV-1428, 2017 WL 1755958, at *11 (S.D.N.Y. Apr. 27, 2017) (finding that the plaintiff's state law consumer protection and false advertising claims against telecommunications service providers were not completely preempted by the Federal Communications Act and stating that "[i]f [d]efendants can demonstrate that New York's laws conflict with federal law, they may well have a viable defense of federal

---

plaintiff must allege "(1) a false statement about the [complainant]; (2) published to a third party without authorization or privilege; (3) through fault amounting to at least negligence on [the] part of the publisher; (4) that either constitutes defamation per se or caused 'special damages.'" *Fuji Photo Film U.S.A., Inc. v. McNulty*, 669 F. Supp. 2d 405, 411 (S.D.N.Y. 2009) (alterations in original) (quoting *Gargiulo v. Forster & Garbus Esqs.*, 651 F. Supp. 2d 188, 192 (S.D.N.Y. 2009)). A battery is "an intentional wrongful physical contact with another person without consent." *Girden v. Sandals Intern.*, 262 F.3d 195, 203 (2d Cir. 2001) (quoting *United Nat'l Ins. Co. v. Waterfront N.Y. Realty Corp.*, 994 F.2d 105, 108 (2d Cir. 1993)). A claim for intentional infliction of emotional distress has four elements: "(i) extreme and outrageous conduct; (ii) intent to cause, or disregard of a substantial probability of causing, severe emotional distress; (iii) a causal connection between the conduct and injury; and (iv) severe emotional distress." *Howell v. N.Y. Post Co.*, 81 N.Y.2d 115, 121 (1993). "A cause of action for either intentional or negligent infliction of emotional distress must be supported by allegations of conduct by a defendant 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Id.* at 122 (quoting *Murphy v. Am. Home Prods. Corp.*, 58 N.Y.2d 293, 303 (1983)).

preemption" in state court); *AmCat Global, Inc. v. Yonaty*, 192 F. Supp. 3d 308, 312 (N.D.N.Y. 2016) (finding that removal was improper because "counsel's assertion of a First Amendment right is essentially an attempt to interpose a defense based on the protections allegedly afforded to him by the federal constitution" which can be asserted in state court).

Moreover, it is well-settled that the existence of a federal defense to a state law claim is an insufficient basis to remove an action to federal court. *See Vaden*, 556 U.S. at 60 ("Federal jurisdiction cannot be predicated on an actual or anticipated defense."); *Rivet*, 522 U.S. at 471 ("Because a defense is not part of a plaintiff's properly pleaded statement of his or her claim . . . removal of a case to federal court may not be predicated on the presence of a federal defense."); *Greenwich Fin. Servs. Distressed Mortg. v. Countrywide Fin. Corp.*, 654 F. Supp. 2d 192, 202–03 (S.D.N.Y. 2009) (finding that the defendant's argument that a federal law modified the plaintiff's state law contract claim was an affirmative defense to the plaintiff's action and, under *Grable*, insufficient to confer federal question jurisdiction). In addition, the fact that the conduct of Defendant's employees and agents at an airport gate might be regulated by federal law does not in and of itself create federal jurisdiction. *See In re Methyl*, 488 F.3d at 135 (finding that removal on the basis of a substantial federal question was improper where the "plaintiffs' claims arise under and will be decided under state law, and although the defendants may refer to federal legislation by way of a defense, the jury's verdict will not necessarily turn on a construction of that federal law"); *Hirschbank v. NVE Bank*, 496 F. Supp. 2d 451, 455 (D.N.J. 2007) ("A state law cause of action does not give rise to a substantial and disputed question of federal law simply because it is predicated on conduct regulated by federal law.").

Defendant's reliance on *Schaeffer v. Cavallero*, 29 F. Supp. 2d 184 (S.D.N.Y. 1998), to argue that section 44902's immunity provision gives rise to federal question jurisdiction, is

15

misplaced. In *Schaeffer*, the district court held that "the construction of [section] 44902, itself a matter of federal law, is necessarily a substantial issue in any case involving state law claims regarding a passenger's removal from an airplane." 29 F. Supp. 2d at 186. In *Schaeffer*, the plaintiff filed suit in state court, asserting contract and tort claims against the defendant, for the defendant's actions in removing the plaintiff from an airplane after a dispute over the plaintiff's carry-on luggage. *Id*. at 185. The defendant removed the case to federal court, arguing that the plaintiff's right to relief was governed by 49 U.S.C. § 44902(b), which provides that an airline "may refuse to transport a passenger or property the carrier decides is or might be inimical to safety." *Id*. (quoting 49 U.S.C. § 44902(b)). The court held that it had federal question jurisdiction because "the federal standard set by [section] 44902, as authoritatively interpreted by the federal courts [in the Second Circuit], has become an essential element of any New York state law claim arising from an airline's refusal to transport a passenger." *Id*. at 186 (citing *Williams v. Trans World Airlines*, 509 F.2d 942, 948 (2d Cir. 1975)). However, unlike in *Schaeffer*, this action does not involve the airline's removal of a passenger from the aircraft, rather, Plaintiff alleges that Defendant unlawfully caused his arrest after granting him a "gate pass" to assist his family onto an aircraft.

Accordingly, the Court finds that Plaintiff's factual allegations in the Complaint do not "necessarily raise" a disputed federal issue.

      **ii.**    **Defendant has not shown that any potential federal issue implicated by Plaintiff's state law claims is substantial**

"[F]ederal jurisdiction demands not only a contested federal issue, but a substantial one." *Grable*, 545 U.S. at 313; *Veneruso*, 933 F. Supp. 2d at 622 (stating that the "'mere presence' of a federal issue in a state cause of action does not confer jurisdiction" (quoting *Merrell Dow*, 478 U.S. at 813)). "The substantiality inquiry . . . looks . . . to the importance of the issue to the

16

federal system as a whole." *Gunn*, 568 U.S. at 260; *see also Liana Carrier Ltd. v. Pure Biofuels Corp.*, 672 F. App'x 85, 92 (2d Cir. 2016) (finding that when "resolution of the issue would be relevant only to these parties, the issue . . . is not substantial enough to trigger federal jurisdiction over . . . [a] fundamentally state law cause of action"). Issues that have "'fact-bound and situation-specific' effects are not sufficient to establish federal arising under jurisdiction." *Gunn*, 568 U.S. at 263 (quoting *Empire*, 547 U.S. at 701); *see also Congregation Machna Shalva Zichron Zvi David v. U.S. Dep't of Agriculture*, 557 F. App'x 87, 90 (2d Cir. 2014) (affirming the district court's dismissal for lack of jurisdiction where "[t]he determination at issue . . . is a fact-specific application of [federal] regulations to [the plaintiff] that does not implicate the validity of the regulations themselves, or have any other broader effect on federal interests").

Application of section 44941(a), a defense to this action, involves a fact-specific inquiry as to whether or not Defendant's agent or employee made a knowingly, false statement leading to Plaintiff's arrest. Neither party challenges the validity of the regulation itself and a state court's ruling on the applicability of section 44941(a) would be limited to the facts and circumstances of this case and would therefore not have any broader effect on federal interests. Further, unlike the facts in *Schaeffer*, none of the New York claims of false arrest, unlawful imprisonment, defamation of character, battery, or intentional and negligent infliction of emotional distress have incorporated any standard established by section 44941(a). Thus, section 44941(a) cannot be said to be a "substantial issue" in this case.

Accordingly, Defendant's reliance on section 44941 does not raise a substantially disputed issue of federal law that would confer jurisdiction on this Court. The Court therefore grants Plaintiff's motion to remand this case to the New York State Supreme Court, Kings County.

### d. Attorneys' fees and costs

Plaintiff seeks attorneys' fees and costs in connection with his remand motion. (Def. Mem. 13.) Defendant has not responded to Plaintiff's request. (*See generally* Def. Mem.)

"[C]ourts may award attorney's fees under section § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal. Conversely, when an objectively reasonable basis exists, fees should be denied." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005).

The Court finds that Defendant had an objectively reasonable basis for removing the action in light of its belief that Plaintiff's claims were preempted by federal law and that Plaintiff's state law claims depend on the construction of federal law. The Court therefore denies Plaintiff's application for attorneys' fees and costs.

## III. Conclusion

For the reasons discussed above, the Court grants Plaintiff's motion to remand the action, and remands the action to the Supreme Court of the State of New York, Kings County. The Clerk of Court is directed to send a certified copy of this Order to the Clerk of the New York Supreme Court, Kings County, and to close this case.

Dated: August 13, 2019
       Brooklyn, New York

SO ORDERED:

       s/ MKB
MARGO K. BRODIE
United States District Judge